UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 26CR101 LMP/DJF |
| | **INDICTMENT** |
| Plaintiff, | |
| | 18 U.S.C. § 1347 |
| | 18 U.S.C. § 2 |
| v. | 18 U.S.C. § 1349 |
| | 18 U.S.C. § 982(a)(7) |
| DEBORAH HODGES, | 21 U.S.C. § 853(p) |
| | 28 U.S.C. § 2461(c) |
| Defendant. | |

**THE UNITED STATES GRAND JURY CHARGES THAT:**

At all times relevant to this Indictment:

1.     Medicaid was a health and long-term care coverage program jointly financed by states and the federal government pursuant to the Social Security Act of 1965 that provided benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. The Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services, was responsible for overseeing Medicaid in participating states, including Minnesota.

2.     Individuals who received benefits under Medicaid were referred to as "recipients."

3.     Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

SCANNED
MAY 2 0 2026
U.S. DISTRICT COURT MPLS

*United States v. Hodges*

4.      Each state, including Minnesota, established and administered its own Medicaid program and determined the type, amount, duration, and scope of services covered within broad federal guidelines.

5.      Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Service providers were authorized to submit claims to Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services. By submitting a claim, the provider certified, among other things, that the services were medically necessary, rendered to the patient as represented, and not rendered as a result of kickbacks or bribes.

6.      In Minnesota, Medicaid was administered by the Minnesota Department of Human Services ("DHS").

**A.      Background on Minnesota's Housing Stabilization Services Program**

7.      Beginning in or around July 2020, DHS began operating the Housing Stabilization Services ("HSS") Program ("the Program"), which was funded through the state's Medicaid program. The Program was designed to help seniors and people with disabilities, including mental illness and substance use disorders, find and maintain housing.

8.      The Program permitted reimbursements for four principal kinds of services:

(a) Housing consultation, during which a consultant (like a social worker or nurse) helped a recipient complete a DHS form called a Housing Focused Person-Centered Plan. The form required minimal information.

*United States v. Hodges*

Consultants could bill Medicaid approximately $174 for a consulting session.

(b) Housing transition services, during which a provider helped a recipient plan for, find, and move into housing. Providers could bill approximately $68 per hour of transition services provided.

(c) Housing sustaining services, during which a provider helped a recipient keep their housing after they had moved in (including through behavioral management of the recipient). Providers could bill approximately $68 per hour of sustaining services provided.

(d) Moving expenses of up to $3,000, subject to conditions.

9. The Program had the following requirements to enroll as a provider: (i) be at least 18 years old, (ii) submit enrollment application to DHS, (iii) undergo a background check, and (iv) complete approximately five hours of online training videos.

10. The Program had the following requirements to enroll as a recipient: (i) be at least 18 years old, (ii) have Medicaid coverage, (iii) have a documented disability or "disabling condition," and (iv) be experiencing housing instability. To receive billable services, a recipient meeting these requirements was required to complete a form called a Housing Focused Person-Centered Plan, detailing their housing challenges and needs. Once submitted, the recipient could enroll with a provider, and the provider could start billing the Program.

11. To bill, a provider submitted the names of the recipient serviced, the type of billable service provided, and the number of hours worked.

*United States v. Hodges*

## B.    The Co-Conspirators

12.    In or around February 2022, DEBORAH HODGES and at least two of her associates in Pennsylvania agreed to become Minnesota HSS providers, despite all being residents of Pennsylvania.

13.    In or around February 2022, DEBORAH HODGES and her associates each filed corporate registration paperwork with the Minnesota Secretary of State. DEBORAH HODGES, with the assistance of her associates, submitted paperwork to enroll in the HSS Program.

14.    Specifically, in or around February 2022, DEBORAH HODGES registered House of Heroes ("HOH") in Minnesota. Through HOH, DEBORAH HODGES participated in the Program as a service provider.

15.    In enrolling as a provider with DHS, DEBORAH HODGES certified she would not submit false or fraudulent claims. She also completed mandatory training setting forth the services for which she was permitted to submit claims. DEBORAH HODGES, by and through HOH, began submitting claims to the Program in or around August 2022, and was responsible for the submission of claims by HOH thereafter.

16.    In addition, DEBORAH HODGES assisted in the operation of Company 1, owned by Co-Conspirator 1. In turn, Co-Conspirator 1 assisted DEBORAH HODGES in the operation of HOH. Company 1 was registered in Minnesota by Co-Conspirator 1 in or around February 2022 and was enrolled as a

*United States v. Hodges*

HSS provider. Co-Conspirator 1, by and through Company 1, began submitting claims to the Program in or around August 2022.

17.    DEBORAH HODGES also assisted in the operation of Company 2, owned by Co-Conspirator 2. In turn, Co-Conspirator 2 assisted DEBORAH HODGES in the operation of HOH. Company 2 was registered in Minnesota by Co-Conspirator 2 in or around February 2022 and was enrolled as a HSS provider. Co-Conspirator 2, by and through Company 2, began submitting claims to the Program in or around August 2022.

18.    Through HOH, Company 1, and Company 2, DEBORAH HODGES and her co-conspirators were supposed to provide housing consulting, transitioning, and sustaining services to qualifying people in need. HOH, Company 1, and Company 2 were paid at quarter-hourly rates and with Medicaid dollars based on the services they claimed to provide.

## C.    The Scheme to Defraud the HSS Program

19.    From in or around February 2022 through in or around August 2025, in the District of Minnesota and elsewhere, defendant DEBORAH HODGES, Co-Conspirator 1, Co-Conspirator-2, and others known and unknown to the grand jury, did knowingly devise and participate in a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by,

5

and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

20.    It was the purpose of the scheme for DEBORAH HODGES and her co-conspirators to unlawfully enrich themselves, by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Minnesota Medicaid (i) that inflated the number of hours of HSS actually provided, (ii) for HSS that were not actually provided, and (iii) for HSS that were not eligible for reimbursement; (b) concealing the submission of false and fraudulent claims to Minnesota Medicaid and the receipt and transfer of proceeds of the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of DEBORAH HODGES and others, and to further the fraud scheme.

21.    The manner and means by which DEBORAH HODGES and her co-conspirators executed the scheme included, among other things, the following:

a.    In or around February 2022, DEBORAH HODGES signed a Provider Agreement with DHS as the "President/CEO" of HOH. In that Agreement, DEBORAH HODGES represented that HOH would submit accurate claims, refund any overpayments for fraudulent billing, and maintain records that disclosed the services that HOH provided to Medicaid recipients.

b.    During the course of the scheme, despite representing to DHS that they operated independent companies, DEBORAH HODGES, Co-Conspirator 1, and Co-Conspirator 2 worked together to find Medicaid recipients, recruited and interviewed employees that worked for each of the providers, and provided

consultations and created housing plans for Medicaid recipients regarding whom false and inflated claims were submitted for payment by HOH, Company 1, and Company 2.

c.      DEBORAH HODGES knowingly and willfully submitted claims to Medicaid for HSS for (i) more services than HOH provided to Medicaid recipients, and (ii) services that HOH did not provide.

d.      DEBORAH HODGES knowingly and willfully submitted, and directed others to submit, claims to Medicaid for HSS purportedly provided to a Medicaid recipient on dates and times when, in fact, that recipient was in in-patient treatment and could not have received the claimed services.

e.      To further the scheme, DEBORAH HODGES created records falsifying the services that HOH claimed that it provided to Medicaid recipients.

f.      To further the scheme, DEBORAH HODGES lied to a government agency concerning whether certain employees who resided in Pennsylvania worked remotely or in Minnesota.

g.      From in or around August 2022 through in or around August 2025, DEBORAH HODGES, Co-Conspirator 1, and Co-Conspirator 2, through HOH, Company 1, and Company 2, billed Minnesota Medicaid approximately $5.3 million for HSS purportedly provided to Medicaid recipients and received approximately $5.2 million based on those false and fraudulent claims.

*United States v. Hodges*

## Count 1
(Conspiracy to Commit Health Care Fraud)

22.    Paragraphs 1 through 21 of this Indictment are re-alleged and incorporated herein.

23.    Between in or around September 2022 and in or around April 2025, in the District of Minnesota and elsewhere, DEBORAH HODGES, Co-Conspirator 1, Co-Conspirator 2, and others known and unknown to the Grand Jury, did knowingly and willfully conspire to execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicaid, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicaid, in connection with the delivery of, and payment for, health care benefits, items, and services, by causing the submission of false and fraudulent claims to Medicaid, contrary to Title 18, United States code, Section 1347.

(Title 18, United States Code, Section 1349)

## Counts 2 through 5
(Health Care Fraud; Aiding and Abetting)

24.    Paragraphs 1 through 21 of this Indictment are re-alleged and incorporated herein.

25.    On or about the dates specified below, in the District of Minnesota and elsewhere, DEBORAH HODGES, through HOH, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting

8

*United States v. Hodges*

commerce, that is, Medicaid, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicaid, in connection with the delivery of, and payment for, health care benefits, items, and services, by causing the submission of the following false and fraudulent claims to Medicaid:

| Count | Medicaid Recipient | Medicaid Claim Number | Approx. Date of Claimed Service | Approx. Amount Claimed |
|---|---|---|---|---|
| 2 | E.C. | 7230940040504 3776 | 2/13/23 | $274.72 |
| 3 | P.C. | 7241950040003 9085 | 2/22/24 | $206.04 |
| 4 | J.G. | 7243170040107 0445 | 8/14/24 | $274.72 |
| 5 | L.B. | 7243590040802 9464 | 11/7/24 | $171.70 |

(Title 18, United States Code, Sections 1347 and 2)

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982(a)(7))

26.     The allegations contained in Counts 1 through 5 of this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture against defendant DEBORAH HODGES pursuant to the provisions of Title 18, United States Code, Section 982.

27.     Pursuant to Title 18, United States Code, Section 982(a)(7), upon being convicted of the crimes charged in Counts 1 through 5 of this Indictment, the convicted defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

9

*United States v. Hodges*

28.    If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b)(1).


A TRUE BILL


_____          _____
UNITED STATES ATTORNEY                       FOREPERSON


_____
LORINDA LARYEA
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

10